Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Louise Jillian Paris, SBN 347801
**OMNI LEGAL GROUP**
10880 Wilshire Blvd. Ste. 1860
Los Angeles, CA 90024
Phone:       310.276.6664
Facsimile:   310.305.1550
omid@omnilg.com
ariana@omnilg.com
jillian@omnilg.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWZ DIGITAL LLC, a Delaware Limited Liability Company; and<br><br>Plaintiff,<br><br>vs.<br><br>CAROLINE DALAL, an individual; and FLOWZ STAFFING LLC, a California Limited Liability Company; and DOES 1 through 20 inclusive;<br><br>Defendants. | Case No.: 2:25-cv-709<br><br>**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE RE: SANCTIONS** |

# PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

Plaintiff Flowz Digital LLC ("Plaintiff"), by and through its undersigned counsel, hereby responds to the Court's Order to Show Cause dated May 5, 2025 (Dkt. 30). Plaintiff respectfully submits that sanctions are not warranted under Federal Rule of Civil Procedure 11 or Rule 16(f), and addresses below the Court's concerns regarding the use of artificial intelligence.

**I. Use of Artificial Intelligence and Initial Oversight**

As detailed in Plaintiff's AI Disclosure (Dkt. 28) and the Declaration of Omid E. Khalifeh (Dkt. 28-1), counsel utilized Lexis+ AI, a commercial legal research and drafting tool developed by LexisNexis, to assist with preliminary drafting of Plaintiff's opposition to the motion to dismiss. The tool was used to help identify potentially relevant authorities and assist in outlining arguments. The final brief was edited and reviewed in full by counsel, and reflects the independent legal judgment of licensed attorneys.

Counsel acknowledges that the Court's Civil Standing Order requires a separate, contemporaneous declaration disclosing AI use. The failure to submit that disclosure alongside the original filing was due to inadvertent oversight, not an intentional attempt to conceal or circumvent the Court's rules. At the time of filing, counsel did not fully appreciate the specific AI-related disclosure requirement found

PLAINTIFF'S RESPONSE TO OSC

at Section F.2 of the Standing Order. Once the Court brought this issue to counsel's attention, Plaintiff promptly submitted the required AI Disclosure. Plaintiff and its counsel take full responsibility for the oversight and have since adopted internal procedures to ensure that any future use of AI tools is accompanied by the necessary disclosures in compliance with local rules and standing orders.

## II. Clarification of In re Daou and Cross Financial Services

In response to the Court's concern that certain cases cited in Plaintiff's opposition "do not appear relevant to its arguments," Plaintiff respectfully provides the following clarifications regarding the citations to *Sparling v. Daou* and *SEC v. Cross Financial Services, Inc.*

Plaintiff cited *Sparling v. Daou*, 411 F.3d 1006 (9th Cir. 2005), not for a direct holding on Rule 23.1, but to support the broader principle that when a party alleges injury to itself rather than harm to the entity as a whole, its claims are treated as direct. In *Sparling*, the Ninth Circuit allowed investors to proceed with claims based on personal losses they allegedly suffered from purchasing stock at inflated prices due to misrepresentations about financial performance. The court stated that the plaintiffs "allege that they incurred substantial personal losses due to their respective purchases of Daou stock at fraudulently inflated prices," and found that they had "sufficiently alleged a connection between the misrepresentations and the purchase or acquisition of the stock and showed a causal connection." Id. at 1012.

While *Sparling* arises in the securities fraud context and does not invoke Rule 23.1, Plaintiff believed it was helpful in illustrating that when a party seeks to redress injuries it suffered directly, as Plaintiff does here under the Lanham Act, its claims are not derivative in nature. Plaintiff is the registrant and owner of the mark at issue and seeks to enforce its own rights to protect its trademark and commercial goodwill. Plaintiff acknowledges that *Sparling* does not analyze the derivative/direct distinction expressly, but submits that its legal framework aligns with the principle that Rule 23.1 is inapplicable when the plaintiff itself is the party harmed.

As to *SEC v. Cross Financial Services, Inc.*, 908 F. Supp. 718 (C.D. Cal. 1995), Plaintiff cited this decision to support the procedural principle that factual disputes regarding ownership, control, or entitlement to assets are not properly resolved on a motion to dismiss under Rule 12(b)(1). In that case, the SEC brought an action against various defendants and named an individual, Colello, as a nominal relief defendant. Colello moved to dismiss for lack of subject-matter jurisdiction, arguing that he had a legitimate interest in the disputed funds. The court rejected this argument, explaining that there were material factual issues precluding dismissal at that stage: "This order constitutes the Court's reasons for finding that there are material triable issues of fact and that plaintiff is entitled to judgment as a matter of law." Id. at 721.

The court further noted that Colello had refused to provide factual responses to key questions, invoking his Fifth Amendment rights in response to inquiries about

the source and nature of his interest in the funds. See id. at 725. The court declined to resolve those factual issues at the Rule 12 stage and permitted the matter to proceed. Although the case arose in the context of federal securities enforcement, Plaintiff believed the underlying rationale, that contested questions of ownership or entitlement require factual development and are not appropriately resolved at the pleading stage, was applicable here.

Plaintiff acknowledges that *Cross Financial* may not be directly analogous in subject matter, but respectfully submits that the case was cited in good faith to emphasize that threshold dismissal under Rule 12(b)(1) is improper where the parties raise factual disputes regarding corporate structure or entitlement to assets. Such arguments, particularly when based on contested documents or disputed authority, are best resolved through the development of a factual record.

**III. The Shell Petroleum Citation and Verification Issue**

In the opposition brief, Plaintiff cited *Shell Petroleum N.V. v. Republic of Costa Rica*, 608 F. Supp. 2d 269 (S.D.N.Y. 2009), for the limited purpose of distinguishing direct from derivative claims. The citation was obtained using the Lexis+ AI platform, which presented it with what appeared to be a complete caption, federal reporter citation, and summary. Based on that interface and prior experience with similar tools, counsel believed in good faith that the case was legitimate and appropriately cited. A screenshot reflecting this presentation is attached as **Exhibit A.**

After receiving the Court's Order (Dkt. 30), Plaintiff undertook efforts to confirm the case through additional legal research platforms. Despite attempts, the case could not be located in those databases. While it is possible that the citation refers to a misrendered or misattributed decision, Plaintiff is unable to verify its existence through the above source. Counsel acknowledges that the citation should have been further independently verified prior to filing. This was an oversight and not an attempt to mislead the Court or opposing counsel. The reliance on Lexis, a long-standing and trusted provider of legal research tools, contributed to counsel's good faith belief in the accuracy and legitimacy of the materials cited. Notably, LexisNexis itself has publicly emphasized the reliability of its Lexis+ AI platform, marketing it as providing "hallucination-free legal citations" specifically to avoid citation errors. See *LexisNexis, How Lexis+ AI Delivers Hallucination-Free, Linked Legal Citations*, attached hereto as **Exhibit B**. Plaintiff's reliance on Lexis+ AI was grounded in the platform's reputation and its explicit assurance of citation accuracy, as described in Exhibit B. The case was not central to Plaintiff's argument, nor was it substantively relied upon beyond a single sentence. Nevertheless, the inclusion of an unverified citation was a mistake, and Plaintiff accepts responsibility for that error.

Out of respect for the Court's concerns and in the interest of accuracy, Plaintiff formally withdraws the citation. As noted in its earlier disclosure, Plaintiff had

PLAINTIFF'S RESPONSE TO OSC

acknowledged the issue and expressed a willingness to remove or replace the citation. Plaintiff regrets any confusion or distraction it may have caused.

**IV. Sanctions Are Not Warranted Under Rule 11 or Rule 16(f)**

Plaintiff respectfully submits that sanctions under Rule 11 or Rule 16(f) are not warranted under the present circumstances. While Plaintiff fully acknowledges the Court's concerns and accepts responsibility for the deficiencies identified in its opposition filing, the record demonstrates that any errors were unintentional, isolated, and addressed promptly in good faith. There is no indication that counsel acted with bad faith, disregard for the Court's authority, or intent to mislead.

Under Rule 11, an attorney presenting a filing to the Court certifies that, to the best of their knowledge, information, and belief, formed after a reasonable inquiry, the filing is legally and factually warranted and not presented for any improper purpose. In this case, Plaintiff's opposition was drafted following a reasoned inquiry using a combination of legal research tools, including AI-assisted resources and past filings. Counsel believed, at the time of submission, that the authorities cited were valid and appropriate to support the legal positions taken.

Plaintiff fully acknowledges that it would have been more prudent to cross-reference all authorities with additional legal databases. This is a rapidly evolving area of technology, and while we are making every effort to stay current and responsible in our use of these tools, we were made acutely aware of their limitations, even when the tool is offered by one of the most renowned names in the

industry. Upon learning of the Court's concerns, Plaintiff promptly undertook corrective action, including the filing of a detailed AI disclosure, the submission of a declaration by lead counsel, and clarification of the basis for the legal arguments made. Counsel also took internal steps to ensure that future filings will include stricter verification procedures and contemporaneous disclosures as required by the Court's Standing Order.

Rule 16(f) permits sanctions for violations of court orders, including failures to comply with pretrial directives. While the AI disclosure required by Section F.2 of the Court's Civil Standing Order was not filed simultaneously with the opposition, this was not a willful or strategic omission. It was an oversight and one that was immediately corrected once identified. Plaintiff did not ignore the Court's Standing Order, but rather acted swiftly and transparently once the deficiency was brought to counsel's attention. A detailed disclosure was filed in response, along with clarifications regarding the citations at issue and a clear explanation of the use of artificial intelligence in the drafting process. Plaintiff has not shown a pattern of noncompliance, nor has it acted in a way that would warrant punitive measures. Plaintiff has acted promptly, respectfully, and in good faith to address the Court's concerns. Sanctions are not necessary to deter future misconduct, as the record already reflects sincere remedial efforts and a commitment to compliance.

## V. Conclusion

Plaintiff and its counsel fully respect the Court's authority and rules and regret the errors noted. However, the issues presented, while serious, were the result of good faith mistakes and not willful misconduct. Given Plaintiff's corrective actions, clarification, and commitment to compliance moving forward, Plaintiff respectfully requests that the Court discharge the Order to Show Cause without sanctions.

RESPECTFULLY SUBMITTED this 9th day of May, 2025.

                **OMNI LEGAL GROUP**

                /s/ Omid E. Khalifeh
                Omid E. Khalifeh
                Ariana Santoro
                Louise Jillian Paris
                Attorneys for Plaintiff,
                Flowz Digital LLC

# EXHIBIT A



# EXHIBIT B



> 5/9/25, 1:27 PM — How Lexis+ AI Delivers "Hallucination-Free" Linked Legal Citations
>
> generate the highest quality answers with validated citation references. LLMs' ability to reason and to minimize hallucinations has become quite impressive with the proper techniques. One of these is known as Retrieval Augmented Generation (RAG).
>
> RAG is a technique for enhancing the accuracy and reliability of Gen AI models with facts fetched from authoritative sources. The proprietary RAG platform we have built at LexisNexis enables Lexis+ AI to ground its responses directly in the most comprehensive collection of legal content, including case law (as reviewed by *Shepard's* editors), statutes, Practical Guidance and more.
>
> This approach leverages our authoritative content to minimize hallucination risks found in off-the-shelf LLMs, check for the most up-to-date law and authority, and cite validated sources. It then ensures the answer contains verifiable facts and linked legal citations that are grounded in the closed universe of authoritative LexisNexis content.
>
> Every prompt in Lexis+ AI undergoes a minimum of five crucial checkpoints in our RAG platform to produce the highest quality answer:
>
> - Lexical (word matches) and semantic (meaning and context) joint search retrieves the most relevant information by understanding the question you're asking it to answer;
> - Recency boost prioritizes results that are most current;
> - Intelligent ranking leveraging authoritative data such as *Shepard's*™ Signal indicators elevates results that are most relevant and valuable for answering your question;
> - Authoritative check pulls up high-value cases and courts to display the most authoritative results; and
> - Citation validation ensures the cases it cites are real and delivers hallucination-free linked legal citations, confirming for you that the answer is grounded in truth.
>
> https://www.lexisnexis.com/community/insights/legal/b/product-features/posts/how-lexis-ai-delivers-hallucination-free-linked-legal-citations    5/9

> 5/9/25, 1:27 PM    How Lexis+ AI Delivers "Hallucination-Free" Linked Legal Citations
>
> answe... than Westlaw Precision AI and users in our ...mercial preview survey (November 2023) rep... hours per week using Lexis+ AI.
>
> **In addition, it's important to understand our promise is not perfection, but that all *linked legal citations* are hallucination-free.**
>
> No Gen AI tool today can deliver 100% accuracy, regardless of who the provider is. Unlike other vendors, however, Lexis+ AI delivers 100% hallucination-free linked legal citations connected to source documents, grounding those responses in authoritative resources that can be relied upon with confidence.
>
> In the rare instance where a citation provided by Lexis+ AI does not include a link, users should always review the citation for accuracy. Remember, Lexis+ AI is meant to enhance the work of an attorney, not replace it. No technology application or software product can ever substitute for the judgment and reasoning of a lawyer. This is the same fundamental principle behind every tool in our tech stack.
>
> We are, in fact, pouring investment into our technology solutions and continuously refining safeguards that aim to deliver the highest quality answers. We are particularly committed to constantly improving the performance of our AI-powered solutions, including our breakthrough Lexis+ AI platform.
>
> **Finally, it's important to understand that we have placed humans in the loop at every stage in the creation of Lexis+ AI.**
>
> Our Gen AI product development roadmap includes a commitment to create accountability through human oversight at every step in the process. We place individuals who are legal subject matter experts in the loop to continuously evaluate and track output quality, and we ask users to rate our Gen AI outputs and submit feedback. This ongoing customer engagement helps us refine and improve our solutions.
>
> https://www.lexisnexis.com/community/insights/legal/b/product-features/posts/how-lexis-ai-delivers-hallucination-free-linked-legal-citations    6/9

